**Lowell Ray PROPST, Appellee,**

v.

**Thomas ALEXANDER, Appellant.**

No. 83355.

Supreme Court of Oklahoma.

May 30, 1995.

Rehearing Denied July 20, 1995.

---

Jack B. Sellers, Jessie Huff Durham, Sapulpa, for appellee.

Ray H. Wilburn, Jane R. Cowdery, Scott R. Taylor, Tulsa, for appellant.

KAUGER, Vice Chief Justice:

The question presented is whether the trial court erred in granting a new trial. A trial court's decision to grant a new trial will not be reversed on appeal unless it is shown that the trial court materially and manifestly erred beyond all reasonable doubt. We find that it did not.

### FACTS

On December 11, 1990, Thomas Alexander (Alexander/the customer) took his car to a gas station in Bristow, Oklahoma, to have the spark plugs changed. The gas station's me-

chanic, Lowell Ray Propst (Propst/the mechanic) directed the customer to back his car into the service bay of the gas station. While he was backing his car into the bay, Propst signaled for Alexander to stop. The customer stopped, and the mechanic kicked a water hose out of the way. As Propst was walking back to his position of safety, Alexander accidently slipped his foot off of the brake and onto the accelerator. As a result, the vehicle pinned the mechanic against the grease barrels at the back of the service bay, breaking Propst's legs.[1]

The mechanic sought recovery for his injuries by filing a claim for workers' compensation benefits against his employer, and by bringing a negligence action against the customer, claiming $719,060.00 in damages.[2] This cause concerns the negligence action. Before the parties conducted voir dire and selected a jury, the trial court granted the mechanic's motion in limine, which excluded from the trial any evidence, argument, inference or other reference to insurance or workers' compensation benefits or its availability.

However, during voir dire, it was revealed that at least one juror was familiar with workers' compensation,[3] and, contrary to the order in limine, Propst's orthopedic surgeon, while testifying at the trial, mentioned the mechanic's workers' compensation case.[4] The mechanic immediately moved for a mistrial, asserting that the surgeon violated the trial court's order in limine when he injected the words "workers compensation" into the trial, but the trial court overruled the motion. Subsequently, a juror approached the bailiff and asked if the juror could ask the trial court a question about the surgeon's testimony regarding workers' compensation. The trial court responded by instructing the juror to discuss any questions with the remaining jurors, and that unresolved questions should be written from the jury to the court. After the jury began deliberating, the jury sent a note to the trial judge. It questioned whether, because of the surgeon's testimony, the jury was allowed to know about workers' compensation, and it asked to know the amount which the mechanic received from workers' compensation benefits.[5] Propst moved for a mistrial, but the trial judge,

1. The mechanic's right leg was completely broken between the knee and the ankle, while the left leg was fractured just below the knee. Both legs required surgery. A pin was placed in the right leg and remained in it for approximately 15 months. The mechanic had surgery on his left knee to attempt to help alleviate arthritis which was aggravated by the accidental injury.

2. There was testimony at trial that: 1) the mechanic's medical expenses until the date of trial were nearly $20,000.00; 2) Propst had lost past wages of nearly $10,000.00; and 3) the mechanic may eventually need one or two knee replacement surgeries. Propst also presented evidence of pain and suffering, physical impairment and disability, disfigurement, expected future medical expenses, and a loss of future earnings.

3. During voir dire, one juror revealed that both he and a family member had experienced work-related injuries. See Trial Transcript pp. 133 & 135. In addition, the entire jury learned, through the questioning, that recovery for a work-related injury is without regard to fault. Trial Transcript at p. 137 provides:

"MR. WILBURN: All right. You understand that in your type of injury that you had, your accident, there's no question of who's at fault. If you're hurt on the job, that's it, you're entitled to recover ..."

4. The surgeon, while testifying on direct examination about his examination and treatment of Propst's injuries, mentioned the workers' compensation case. Trial Transcript, p. 245 provides in pertinent part:

"Q  Now, go ahead and let's—let's go on with your contacts with him.
A  Okay. My next visit was in—on February the 5th, 1992. He told me that he wanted to have the rod removed from his right leg before he closed out the worker's comp case. He stated that he'd also like something done about the continued pain in the ..."
According to Propst, the surgeon was instructed repeatedly prior to the trial not to mention either workers' compensation or insurance. However, at trial, the surgeon read from his medical records and mentioned the workers' compensation case. The reference to the workers' compensation case was deleted from the copy of the surgeon's medical records which were admitted into evidence and submitted to the jury. However, the surgeon apparently brought his own copy of the records to the trial which still contained the reference to workers' compensation.

5. The record contains another note which the jury sent to the trial judge which asked whether, if it found each party 50% negligent, Propst would receive a dollar amount. The trial court responded to this note by referring the jurors to read the jury instructions for the answer.

rather than granting the mechanic's motion, instructed the jury to disregard workers' compensation coverage.[6]

The jury returned a verdict finding Propst 49% contributorily negligent and Alexander 51% negligent. It awarded the mechanic $70,000.00 in damages.[7] The mechanic moved for a new trial, asserting that the trial was unfair because the introduction of workers' compensation insurance information into the negligence trial was prejudicial. After a hearing on the motion for new trial, the trial court granted the mechanic's motion, finding that Propst did not receive a fair trial because he was prejudiced by the surgeon's testimony.[8]

Alexander appealed, and the Court of Appeals reversed the trial court's order granting the mechanic a new trial; and it remanded the cause for the entry of judgment according to the jury verdict. We granted certiorari on March 21, 1995, to determine whether the trial court erred in granting a new trial.

**6.** The trial judge sent a note which referred the jury to the jury instructions for the answer. The instruction provides:

> "You are instructed that the parties and issues are properly before this Court and Jury for determination.
> Whether or not there was a Worker's Compensation proceeding should not be considered by you in any way in determining the issues presented to you in this case. Worker's Compensation is irrelevant to your determination of the issues in this case."

**7.** Alexander paid Propst $38,494.05, which was $70,000.00 reduced by Propst 49% contributory negligence.

**8.** The mechanic raised several allegations of error in his motion for a new trial, however, the trial court granted the motion on the grounds that the injection of workers' compensation insurance into the case was prejudicial and it overruled all of the other grounds which were raised.

**9.** Alexander asserts that the testimony of Propst's witness which mentioned workers' compensation on direct examination was elicited. He cites *Republic Nat'l Life Ins. Co. v. Chilcoat*, 368 P.2d 821, 826 (Okla.1961) for the proposition that, as a result of the elicited testimony, Propst cannot benefit from his own error. However, *Chilcoat* is distinguishable on its facts and it does not stand for such a broad exposition of the law.

## A TRIAL COURT'S DECISION TO GRANT A NEW TRIAL WILL NOT BE REVERSED ON APPEAL UNLESS IT IS SHOWN THAT THE TRIAL COURT MATERIALLY AND MANIFESTLY ERRED BEYOND ALL REASONABLE DOUBT.

The mechanic argues that because the introduction of workers' compensation into the negligence action was prejudicial, the trial court neither abused its discretion nor acted arbitrarily when it granted his motion for a new trial. Alexander contends that: 1) the trial was fair; 2) the mention of workers' compensation was not prejudicial; and 3) the trial court abused its discretion when it granted the new trial.[9]

A trial court is vested with wide discretion on whether to grant a new trial.[10] When a trial court's decision to grant a new trial is appealed, this Court will indulge every presumption in favor of the correctness of the trial judge's ruling.[11] An order granting a new trial will not be reversed on appeal unless the record clearly shows that the trial court either erred on a pure and unmixed

*Chilcoat* involved a negligence action against a life insurance company for unreasonably delaying the payment of benefits. In the defendant's opening statement, the defendant referred to the decedent as a diabetic and then later argued that the trial court erred in permitting the introduction of evidence as to whether decedent was in fact a diabetic. This Court stated the general rule that where a person invites the injection of incompetent evidence, the person cannot later complain of the submission of evidence relating to the same subject matter. Here, there was a motion in limine which prohibited the mentioning of workers' compensation and the surgeon was aware of it. The mechanic attempted to exclude the possibility of the mentioning of workers' compensation by deleting every reference to workers' compensation from all of the documents it entered into evidence. See discussion, note 4, supra.

**10.** *Austin v. Cockings*, 871 P.2d 33, 34 (Okla. 1994); *Fitts v. Standard Life & Acc. Ins. Co.*, 522 P.2d 1040, 1043 (Okla.1974); *Elmore v. McQuestion*, 423 P.2d 1016, 1019 (Okla.1967); *Horn v. Sturm*, 408 P.2d 541, 546–47 (Okla.1965).

**11.** *Austin v. Cockings*, see note 10, supra; *Elmore v. McQuestion*, see note 10, supra; *Northwest Nat. Bank v. Boecking Const. Co.*, 361 P.2d 686, 688 (Okla.1961); *Y & Y Cab Co. v. Ford*, 207 Okla. 663, 252 P.2d 430, 431 (Okla.1953).

question of law or acted arbitrarily or capriciously.[12] If the new trial is granted by the same judge who tried the case, a much stronger showing of error or abuse of discretion is required for this Court to reverse than if a party appeals from a refusal to grant a new trial.[13] The Court's syllabus in *Pfrimmer v. Johnson*, 195 Okla. 33, 154 P.2d 765 (Okla.1944) holds that:

"This court will not reverse the ruling of the trial court granting new trial unless it can be seen beyond all reasonable doubt that the trial court has manifestly erred with respect to some pure, simple, and unmixed material question of law, and that except for such error the ruling of the trial court would not have been made. It will very seldom and very reluctantly reverse the decision or order of the trial court granting a new trial."[14]

The rationale for this rule of law is that the trial court is in a much better position to appraise the fairness of a proceeding before it than can be garnered by review of the record by the appellate court.[15] A decision to grant a new trial should not be reversed unless it is shown beyond all reasonable doubt that the trial court materially and manifestly erred.[16]

■ Counsel for the mechanic repeatedly objected to the injection of workers' compensation into this cause, and he several times, during the course of the trial, moved for a new trial. After the trial judge instructed the jury regarding workers' compensation and the jury returned its verdict, it reconsidered its' decision to grant a new trial and recognized that it had erred by not previously granting Propst a new trial.[17]

12. *Austin v. Cockings*, see note 10, supra; *Poteete v. M.F.A. Mut. Ins. Co.*, 527 P.2d 18, 22 (Okla. 1974); *Elmore v. McQuestion*, see note 10, supra.

13. *Austin v. Cockings*, see note 10, supra; *Fitts v. Standard Life & Acc. Ins. Co.*, see note 10, supra; *Elmore v. McQuestion*, see note 10, supra.

14. See also, *Northwest Nat. Bank v. Boecking Const. Co.*, note 11, supra.

15. *Central Mut. Ins. Co. v. Dickason*, 451 P.2d 1, 3 (Okla.1969); *Houston v. Pettigrew*, 353 P.2d 489, 493 (Okla.1960); *Harper v. Pratt*, 193 Okla. 86, 141 P.2d 562 (Okla.1943).

16. *Austin v. Cockings*, see note 10 at 35, supra; *Fitts v. Standard Life & Acc. Ins. Co.*, see note 10, supra; *Mead v. Snapp*, 180 Okla. 214, 68 P.2d 771, 772–73 (1937).

17. The transcript of the trial court's decision to grant a new trial provides in pertinent part at pgs. 5–6:

"Did the Doctor's answer effectively suggest insurance or indemnification such that plaintiff was prejudiced? At first it was the feeling of the court that it did not; however, during the course of the trial a juror approached the bailiff to see if he could ask me a question about worker's compensation. I declined and informed Counsel of the incident. Then shortly after the jury retired to deliberate, the jury asked the Court the following two questions. One: Are we allowed to know about workers' compensation due to Dr. Lewis's testimony. And two: we would like to know an amount received. This Court had serious questions by that time whether the reference by plaintiff's own witness had prejudiced the jury to the extent that plaintiff could not receive a fair trial.

In all honesty the last thing this Court wanted to do at that time, and now, is to abort the trial. The trial had been long and hard fought ... I think it will be obvious from the record that I did not want to consider the possibility of a mistrial, especially when the basis for the mistrial is an answer elicited from the moving party's own witness on direct examination. However, the real issue is whether the parties, plaintiff and defendant, received a fair trial where substantial justice was done, or was the apparent inadvertent injection of worker's compensation into this case was so prejudicial to plaintiff that he did not receive substantial justice. In considering the authorities presented by respective Counsel and the facts of this case as they developed, this Court now feels it erred in not sustaining plaintiff's motion for mistrial when first made, or at least when the other incidents occurred with the jurors relating to worker's compensation.

In my unwaiving efforts to successfully conclude the trial of this case, I neglected the prejudice that was injected into this trial. I minimized the effect of that prejudice. In short, the priority of this Court was on concluding this case by jury verdict rather than making sure that substantial justice is done to the litigants during the course of this trial. Unless substantial justice is done during the course of a trial, the verdict is meaningless....
I have learned a valuable lesson. In my 12 to 13 years on this bench I have only granted a new trial on a jury verdict one or possibly two times that I can recall. I erred in not granting the mistrial during the course of this trial, and I compound that error by forcing this case to verdict. The motion for new trial is hereby sustained."

■ The record clearly reflects that workers' compensation was injected into the negligence trial. Whether the injection of workers' compensation into a third-party negligence action is prejudicial to a litigant's rights to a fair trial depends upon the facts and circumstances of each case.[18] Here, from the outset, it was revealed to the jurors that at least one member of the jury was familiar with workers' compensation and if the injury occurs on-the-job, workers' compensation provides benefits.[19] The surgeon's testimony referring to workers' compensation could have led the jury to infer that the mechanic's medical bills or other expenses had been paid by workers' compensation. In addition, after the surgeon mentioned workers' compensation, as evident from the jurors' questions about workers' compensation, the jury became curious about the workers' compensation case and what the mechanic recovered. The prejudicial effect of the mention of workers' compensation could have had an effect similar to the mentioning of insurance benefits in a personal injury case, which would require a new trial.[20] The trial court appraised the proceedings and determined that the effect of the injection of workers' compensation was prejudicial and that the mechanic did not receive a fair trial. Under these facts, and our review of the record,[21] we cannot say that beyond all reasonable doubt, the trial court materially and manifestly erred in granting Propst's motion for a new trial.[22]

18. See, *Hutton v. Lowry*, 444 P.2d 812, 814 (Okla.1968) (Recognizing that the prejudicial effect of testimony concerning insurance depends upon the facts and circumstances of each case.).

19. See discussion note 3, supra.

20. This Court has previously recognized that the injection of workers' compensation insurance in a third-party suit may not in certain circumstances be equivalent to mentioning insurance. See, *Black Gold Petroleum Co. v. Webb*, 186 Okla. 584, 99 P.2d 868, 869 (Okla.1940) (Recognizing that death benefits provided as workers' compensation were not equivalent to insurance which would be prejudicial because it was not insurance that would indemnify the defendant for the damages sought in the third-party wrongful death action.). However, here the damages such as medical expenses and lost wages which the mechanic was attempting to recover from the customer, were some of the same damages which workers' compensation would cover. In this case the question of liability and the amount of damages may have been exceedingly close. However, there is no way to probe the minds of the jurors and to determine the effect of the injection of workers' compensation had upon the thinking of the jury. The jury could have easily been sympathetic toward the customer and reduced his percentage of liability and damages because it considered the possibility that the mechanic had already recovered for some of his damages through workers' compensation. Admonition of the court to the jury to disregard the information is insufficient to cure the jurors' error and it can only be corrected by granting a new trial. See, e.g. *Million v. Rahhal*, 417 P.2d 298, 301 (Okla.1966); and *Pratt v. Womack*, 359 P.2d 223, 227–28 (Okla.1961).

21. Both parties mention juror affidavits and argue their applicability to the present case. However, without considering either parties' affidavits, it is clear from the record that workers' compensation was erroneously injected into this case and that the trial court did not err when it found that the injection was prejudicial to the mechanic. Accordingly, we need not address whether the affidavits are admissible under 12 O.S.1991 § 2606(b), which provides:

"Upon an inquiry into the validity of a verdict or indictment, a juror shall not testify as to any matter or statement occurring during the course of the jury's deliberations or as to the effect of anything upon his or another juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes during deliberations. A juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. An affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying shall not be received for these purposes."

22. *Austin v. Cockings*, see note 10 at 35, supra; *Fitts v. Standard Life & Acc. Ins. Co.*, see note 10, supra; *Mead v. Snapp*, see note 16, supra. Alexander cites *Dodson v. Henderson Prop., Inc.*, 708 P.2d 1064, 1065 (Okla.1985) and *Bishop's Restaurants Inc. v. Whomble*, 355 P.2d 560, 564 (Okla.1960), for the proposition that the trial court did not exercise sound legal discretion when it granted the mechanic a new trial. We agree with Alexander concerning the general rule that a trial court's granting of a new trial must be exercised by sound legal discretion in accordance with recognized principles of law, rather than arbitrary discretion exercised at will. See, *Holden v. Coussens*, 576 P.2d 758, 759 (Okla. 1978); *Lindsay v. Sikes*, 483 P.2d 1141, 1145 (Okla.1971). However, we find that Alexander may not rely on these cases because they are

## CONCLUSION

A trial court has wide discretion to grant a new trial [23] and every presumption in favor of the correctness of the granting of a new trial is given to the trial judge's decision.[24] If a new trial is granted by the judge who tried the case, a much stronger showing of error or abuse of discretion is required for reversal.[25] The granting of a new trial will not be reversed on appeal unless it is shown that the trial court materially and manifestly erred beyond a reasonable doubt.[26] The record clearly reflects that workers' compensation was injected into the trial, and that the jury may have erroneously considered workers' compensation in rendering its verdict. The trial court assessed the proceedings, and determined that the effect of these errors was prejudicial and that the mechanic did not receive a fair trial. We cannot say beyond all reasonable doubt, the trial court materially and manifestly erred in granting the new trial.

**COURT OF APPEALS OPINION VACATED; TRIAL COURT AFFIRMED.**

All Justices concur.

distinguishable on their facts from the instant case. In *Dodson*, the defendant moved for a new trial asserting that the jury's assessment of damages was excessive. The trial judge ordered that unless the plaintiff agreed to a remittitur within 15 days, it would grant the defendant's motion. The plaintiff refused to remit and the trial court ordered a new trial. We recognized that before a jury verdict can be set aside as excessive, it must be unreasonable and shown to have been activated by passion, partiality, prejudice or corruption. A review of the record in *Dodson* revealed that no error or prejudicial misconduct occurred whatsoever. The trial court in *Dodson* had no basis for its finding that the verdict was excessive. *Whomble* also involved a negligence action which, after the verdict, the trial court granted a new trial because it found that the verdict was unconscionable. However, there were no prejudicial errors or any other errors in which the trial court could have based its finding. In both *Dodson* and *Whomble* a review of the record revealed that no error or prejudicial

misconduct occurred. Because there was no basis for their findings, we held that the trial courts in *Dodson* and *Whomble* abused their discretion.

23. *Austin v. Cockings*, see note 10, supra; *Fitts v. Standard Life & Acc. Ins. Co.*, see note 10, supra; *Elmore v. McQuestion*, see note 10, supra; *Horn v. Sturm*, see note 10, supra.

24. *Austin v. Cockings*, see note 10, supra; *Elmore v. McQuestion*, see note 10, supra; *Northwest Nat. Bank v. Boecking Const. Co.*, see note 11, supra; *Y & Y Cab Co. v. Ford*, see note 11, supra.

25. *Austin v. Cockings*, see note 10, supra; *Fitts v. Standard Life & Acc. Ins. Co.*, see note 10, supra; *Elmore v. McQuestion*, see note 10, supra.

26. *Austin v. Cockings*, see note 10 at 35, supra; *Fitts v. Standard Life & Acc. Ins. Co.*, see note 10, supra; *Mead v. Snapp*, see note 16, supra.