**McALESTER URBAN RENEWAL AUTHORITY, Appellant,**

v.

**Wade A. WATTS et al., Appellees.**

**No. 45283.**

Supreme Court of Oklahoma.

Oct. 16, 1973.

**262**

Gary W. Dugger, Bratton, Allford & Ashmore, McAlester, for appellant.

Clyde Stipe, Stipe, Gossett & Stipe, McAlester, for appellees.

BERRY, Justice:

McAlester Urban Renewal Authority [the Authority] commenced condemnation proceedings against appellees [owners] to acquire owners' property for urban renewal purposes. Commissioners were appointed and fixed the value of the land at $11,250. Owners demanded a jury trial and the jury fixed the amount of their recovery at $19,000. The trial court entered judgment accordingly and further entered an order awarding attorney fees in the amount of $850 to owners pursuant to 11 O.S.1971 § 1663(f). The Authority appeals.

The Authority first contends the trial court erred in allowing owners to introduce evidence of unaccepted offers to purchase the condemned land.

In this regard Jay Basolo testified he had purchased and sold commercial property in the city of McAlester for use as service stations, in 1966 [approximately 4 years before condemnation proceedings were commenced] he desired to acquire owners' property and adjacent property for a service station and offered owners $15,000 for their property, in 1966 the property was worth what he offered for it and in his opinion the value of the tract had increased since 1966, his offer was never accepted and was contingent upon his acquiring adjacent property, he subsequently purchased other property for the service station, and he was not interested in acquiring owners' property at the time of the trial.

Leo B. Thompson testified he operated a business in the area of owners' property and was familiar with property values in the area, two or three years before the trial he attempted to acquire owners' property to install a barbecue, he and others offered $15,000 for the property, he later attempted to obtain an option to purchase the property for $18,000 and in his opinion the property was worth $18,000 at that time.

Wade Watts, the owner, testified he refused both offers because he felt the land was worth more and in his opinion the land was worth $30,000 at the time it was condemned.

This evidence was introduced for the purpose of establishing the market value of owners' land. The Authority contends evidence of offers by third parties is inadmissible for the purpose of proving value, the most recent offer was made two years be-

fore the trial and was for $18,000, and the closeness of the amount of the verdict and the amount of this offer indicates the jury relied upon testimony concerning the offers in determining the market value of the land.

■ Evidence of unaccepted offers to purchase is generally held to be inadmissible for the purpose of establishing market value regardless of whether testified to by the offeror or the offeree. Consolidated Gas Service Co. v. Tyler, 178 Okl. 325, 63 P.2d 88; Kilbourne v. McAllister, 179 Okl. 267, 65 P.2d 516; Page v. Oklahoma City, 129 Okl. 28, 263 P. 448; Herron v. Spencer, 204 Okl. 481, 231 P.2d 691; Annotation "Market Value-Offer as Evidence", 7 A. L.R.2d 781.

In Chicago, M. & St. P. Ry. Co. v. Alexander, 47 Wash. 131, 91 P. 626, a witness was allowed to testify land was worth a certain amount and he had offered that amount for it. There the court noted the witness was not qualified as an expert and stated:

"Neither the party who makes an offer for land nor the party to whom it is made should, for the purpose of showing value, be permitted to testify to the same upon his examination in chief in an action of this character. * * *"

The court then quoted the following from an earlier case:

" 'It has been intimated in some cases that offers are some evidence of value. But it is a class of evidence which it is much safer to reject than to receive. Its value depends upon too many circumstances. If evidence of offers is to be received, it will be important to know whether the offer was made in good faith, by a man of good judgment acquainted with the value of the article and of sufficient ability to pay; also whether the offer was cash, for credit, in exchange, and whether made with reference to the market value of the article, or to supply a particular need, or to gratify a fancy. Private offers can be multiplied to any extent for the purpose of a cause, and the bad faith in which they were made would be difficult to prove.' "

■ Therefore, we conclude the trial court erred in allowing this testimony to be offered in evidence for the purpose of establishing market value of the land, and the question presented is whether the Authority was prejudiced thereby.

In Stone v. Payne, Tex.Civ.App., 168 S. W.2d 503, the court stated:

"Notwithstanding legal principles condemn it proof of a offer to purchase at a stated price is calculated to appeal to the lay mind as good evidence of value which fact renders it particularly harmful."

In Lower Nueces River Water Supply District v. Sellers, 323 S.W.2d 324, Tex. Civ.App., testimony as to the value of land ranged from $225 to $500 per acre. One of the witnesses testified he at one time offered $400 for the land and that in his opinion the land was worth $500 at the time of the trial. The trial court later instructed the jury to disregard the testimony concerning the offer but reference was made to it during closing argument and the court again instructed the jury to disregard it. The appellate court reversed stating:

"In view of the fact that McNair in his testimony placed the present value of the land at almost double the value placed thereon by appellant's witnesses, and in view of the fact that appellees' counsel, * * * inadvertently referred to this evidence; and in view of the further fact that the jury's verdict valued the land very close to the value placed thereon by McNair, we are led to believe that the jury was at least caused to discredit appellant's witnesses. Here we have numerous witnesses expressing their opinions as to the value of the land, and one witness actually offering to buy the land at a price far in excess of the value placed thereon by these opinions.

"* * * The question of whether or not this error was calculated to cause and probably did cause the rendition of an improper judgment in the case is a matter for the court to determine upon the whole record in the case. * * * We are not unmindful of the fact that other witnesses of appellees valued the land higher than did McNair, and that the verdict of the jury is within the range of such witnesses, nevertheless, * * * we think, the matter was impressed * * * upon the minds of the jury * * *. Therefore, considering the record as a whole, we have reached the conclusion that the error complained of was harmful to appellant within the meaning of Rules 434 and 503, T.R.C.P."

The closeness of the verdict and the amount of the offers in this case indicates the jury relied upon the testimony of offers in determining the market value of appellee's land.

Since the amount of the offers exceeded the highest evidence of value placed upon the land by the Authority's witnesses, we conclude the Authority was prejudiced by this testimony and therefore the judgment of the trial court must be reversed for a new trial.

The Authority next objects to the order of the trial court awarding attorney fees to appellee contending no attorney fees can be awarded in the absence of statute and that 11 O.S.1971 § 1663(f) is unconstitutional under Art. VI cl. 2, United States Constitution; Amendment XIV § 1, United States Constitution; Art. V § 59, Oklahoma Constitution; and Art. V § 45, Oklahoma Constitution.

However, we need not consider this contention. Since we reverse the judgment entered upon the jury's verdict in this case, the order awarding attorney fees must also be reversed.

Reversed and remanded for a new trial.

DAVISON, C. J., WILLIAMS, V. C. J., and IRWIN, LAVENDER, BARNES, SIMMS and DOOLIN, JJ., concur.

HODGES, J., dissents.

HODGES, Justice (dissenting).

The Court states as a principle of law that it is error to admit in evidence *any* offers to purchase property in condemnation cases. I do not believe the rule should be that inflexible. While I agree such evidence is sometimes fraught with danger, there are instances where bona fide offers to purchase should be admissible where a proper foundation has been established. See 29 Am.Jur.2d 399; 7 A.L.R.2d Anno. 797.

A bona fide offer to purchase may be the best evidence available as to the market value of the land. It does show what a willing buyer would pay and to that extent is some indication as to the market value. Of course, it is important to know whether the offer was made by a person acquainted with the value of the property and whether it was made with reference to market value or to supply a particular need or to gratify a fancy. Los Angeles City High School District v. Kita, 169 Cal.App.2d 655, 338 P.2d 60.

In my opinion, an offer to purchase made in good faith before there is any announcement to take the property for public use by a person willing and able to pay should be admissible in evidence upon the issue of the market value of the condemned property.

I respectfully dissent.